IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**CARLO MORISSETTE,**

    Petitioner,

vs.                                      Case No. 4:11cv337-SPM/WCS

**ERIC H. HOLDER, JR., et al.,**

    Respondents.

_____/


## REPORT AND RECOMMENDATION

Petitioner, proceeding *pro se*, filed a petition seeking a writ of habeas corpus under § 2241 on July 13, 2011.  Doc. 1.  Petitioner alleged that he was detained indefinitely in the Wakulla County Jail by Immigration officials because his native country of Haiti had refused to issue travel documents for him.  *Id.*  Petitioner stated that he had been ordered removed from the United States in 1997, had been in immigration custody since January 12, 2011, and at the time of filing, had been in detention awaiting removal for six months.  *Id.*

Respondents filed an Answer asserting the petition should be dismissed as prematurely filed, and because Petitioner failed to show there is no significant likelihood

of removal in the reasonably foreseeable future.  Doc. 15.  Respondents contend that diplomatic relations exist with the Haitian government, travel documents have been issued for Haitians, and removal flights have begun again to Haiti since January 20, 2011.  *Id.*

The service order,[1] doc. 6, and a subsequent order, doc. 12, reminded Petitioner of his opportunity to submit a reply to the answer on or before November 4, 2011.  Petitioner has not responded to the answer.

**Relevant Facts**

The facts as presented by Respondents, and uncontested by Petitioner, reveal that Petitioner is a native and citizen of Haiti who initially entered the United States sometimes in June of 1975 "as a stowaway under" an alias name of Jean Yves Morisette.  Doc. 15-1 (affidavit of Angel Gonzalez).  In 1976, a woman named Michelle Freeman filed "an alien relative visa petition" asserting she was the spouse of Petitioner and a U.S. citizen.  *Id.*  She later withdrew the petition acknowledging it was a sham marriage to circumvent U.S. immigration laws.  *Id.*  In January of 1978, Petitioner absconded and failed to appear for his immigration hearing, scheduled for January 26, 1978.

Later in 1978, Petitioner assumed another identity and a different woman filed another "alien relative visa petition" as the U.S. citizen spouse of Petitioner.  *Id.*, at 2.  The petition was initially approved and then revoked when the immigration Service

---

[1] The service order required Petitioner to provide a response clarifying why he provided two different alien numbers in the petition.  Doc. 6.  Petitioner filed a response which did little to clarify the two numbers, but it did state that the current number used by Immigration and Customs Enforcement is A022-109-293.  Doc. 10.

discovered Petitioner "had assumed a false identity, claimed no prior marriages, and discovered the prior marriage of the petitioner to Michelle Freeman had not yet been legally terminated." *Id.*

In March of 1979, an Immigration Judge ordered voluntary departure in lieu of deportation. *Id.* Petitioner's departure to Haiti was verified on March 16, 1979, but on August 5, 1992, Petitioner attempted to enter the United States with another false identity and tried to use a fraudulent Dominica passport. *Id.* Though the fraud was discovered upon entry, Petitioner was paroled into the United States pending an exclusion hearing before an Immigration Judge. *Id.*

After some criminal convictions in the mid-1990's, Petitioner was found to be inadmissible by an Immigration Judge on August 27, 1997. *Id.* He was ordered "excluded and deported from the United States." *Id.* On April 3, 2011, before he was removed, he was convicted of several more crimes. *Id.* Then on February 16, 2005, a third woman filed another visa petition for alien relative on Petitioner's behalf, and at that time, Petitioner had assumed the name used in this § 2241 petition, Carlo Morissette. *Id.* Petitioner also "continued filing fraudulent petitions and applications for immigration benefits, including but not limited to a petition for classification as the widower of a US citizen, applications for temporary protected status, and applications for adjustment of status to lawful permanent resident." *Id.* All applications and petitions were denied. *Id.*

On January 6, 2011, Petitioner was arrested in Miami, Florida, and on January 11th, he was "turned over to US Border Patrol, and upon further processing the true identity of the petitioner was revealed and he was identified as an immigration fugitive with an outstanding exclusion order." *Id.*

The affidavit provided by Respondents acknowledges that Petitioner was "initially brought into ICE custody at the Krome Service Processing Center in Miami, Florida on January 12, 2011."  Doc. 15-1, p. 3.  However, due to an outstanding criminal warrant, Petitioner was turned over to the Miami-Dade police department.  *Id.*  After resolution of that warrant, Petitioner was returned to ICE custody on April 18, 2011.  *Id.*

In the interim, an attorney for Petitioner filed a motion to reopen and a request for a stay of removal of Petitioner's exclusion and deportation order.  Doc. 15-1.  The stay of removal was granted on April 14, 2011, until determination of the motion to reopen.  *Id.*  While the stay was in effect, "ICE could not move forward with removal efforts . . . ."  *Id.*  On May 12, 2011, the Immigration Court denied the motion to reopen and the stay of removal was lifted.

ICE instructed Petitioner that "he must apply for a travel document and provide ICE with proof of said application."  Doc. 15-1.  As of September, 2011, when the answer was filed, Petitioner had "failed to provide ICE with evidence that he complied with this request."  *Id.*

**Analysis**

In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized."  533 U.S. at 699, 121 S.Ct. 2491.  Additionally, the <u>Zadvydas</u> Court "held that the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " <u>Zadvydas</u>, 533 U.S. at 701,

121 S.Ct. 2491, *explained in* Clark v. Martinez, 543 U.S. 371, 377-378, 125 S.Ct. 716, 722 (2005).  The six months period of time is calculated from the time a removal order becomes "final."  Clark, 125 S.Ct. at 728; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 11th Cir. 2005).  Pursuant to § 1231(a)(1)(B), the removal period does not begin to run until the latest of:

> (1) The date the order of removal becomes administratively final.
>
> (2) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (3) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  As the Eleventh Circuit concluded in Akinwale v. Ashcroft that the "six-month period [ ] must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under Zadvydas."  Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).  In Akinwale, the petitioner filed the § 2241 petition after having been in detention for only four months.  *Id.*, at 1051.  It is not enough that the period of time has expired by the time the petition is ruled on by the court, the Zadvydas period must have expired before the petition is filed.  287 F.3d at 1051-52.

      This case is controlled by Akinwale.  Petitioner filed this case on July 13, 2011.  Doc. 1.  However, because a stay of removal was issued on April 14, 2011, the order of removal did not become "final" for purposes of calculating § 1231's removal period until the stay was lifted, which did not occur until May 12, 2011.  Thus, despite the fact that Petitioner was first taken into ICE custody in January, 2011, there were interruptions to the removal period which effected the Zadvydas calculations.  The § 2241 petition filed

in this case was prematurely filed just two months after the removal order became final. As a matter of law, this petition must be dismissed as it was prematurely filed.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion for leave to proceed *in forma pauperis*, doc. 5, be **DENIED as moot**, *see* doc. 4, and that the § 2241 petition filed by **CARLO MORISSETTE,** doc. 1, be **DISMISSED** because it was prematurely filed and Petitioner failed to demonstrate that he was entitled to relief pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

**IN CHAMBERS** at Tallahassee, Florida, on December 1, 2011.


    s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**